UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV16-J

MELINDA R. NELSON                                                                               PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Melinda Nelson ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On December 23, 2005, Claimant filed application for disability insurance benefits and supplemental security income payments, alleging that she became disabled as of December 6, 2005. After a hearing, Administrative Law Judge Roger Reynolds ("ALJ") determined that claimant's basilar artery aneurysm with stenting procedures, major depressive disorder, anxiety with social phobia and decreased memory secondary to cardiovascular accident were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found that she retained the residual functional capacity for jobs that exist in significant numbers in the national economy. This became the final decision of the Defendant when the Appeals Council considered additional evidence but denied review on November 9, 2007.

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

ARGUMENTS ON THIS APPEAL

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

Plaintiff argues that the ALJ erred in failing to find that she had established the requirements for disability at Step Three ("the Listings"). In the alternative, she argues that the substantial evidence fails to support the ALJ's finding that she retained the capacity for other work.

Plaintiff bears the burden of proving that she meets or equals a Listing. Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987), Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986). To meet a listing, a claimant must present specific *medical evidence* to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. That is, at Step Three, it is insufficient to point to the existence of an impairment and use various types of evidence to argue that the functional restrictions imposed by that impairment are disabling; rather, the plaintiff must point to medical evidence establishing *all* of the criteria set out in the listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The plaintiff cannot show that s/he "equals" a Listing simply by showing overall functional impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

The Listings plaintiff believes she met are 12.04 and 12.06. These must be addressed separately. Listing 12.04 concerns "Affective Disorders: Characterized by a disturbance of mood,

3

accompanied by a full or partial manic or depressive syndrome." As there is no evidence to show the existence of the "C" criteria, plaintiff must establish both the "A" and "B" criteria. To satisfy the "A" criteria for a depressive syndrome, plaintiff must show (through medical evidence only) the existence of at least four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions, or paranoid thinking. To satisfy the "B" criteria, plaintiff must show (through medical evidence only) the existence of two of the following: Marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; repeated episodes of decompensation.

Listing 12.06 concerns "Anxiety Related Disorders." As there is no evidence of satisfaction of the "C" criterion (i.e., "complete inability to function independently outside" the home), plaintiff cannot establish Listing severity without satisfying the "B" criteria, which are the same as those set out with respect to Listing 12.04.

Plaintiff attempts to satisfy the "B" criteria of both Listings by pointing impermissibly to non-medical evidence (i.e., her own or her husband's testimony, evidence which is relevant at Stage 4, but not relevant at Stage 3. Furthermore, she attempts to satisfy the "B" criteria by aggregating the functional problems caused by different impairments. That is, she argues that her activities of daily living are restricted because  not because of depression, but because of memory lapses, weakness, and "poor motion control." Similarly, she contends that the record shows difficulties in maintaining social functioning because she "tires too quickly to go dancing or play sports," and is "unable to focus on games." With all respect, the Court suggests that this represents a

miscomprehension of the sequential evaluation process. The sole inquiry at Step 3 of the sequential evaluation process is whether medical evidence, standing alone, shows the existence of *every* Listing requirement with regard to a *particular* impairment. Contending that a physical limitation should be considered to meet a 12.04 or 12.06 Listing is essentially mixing apples and oranges. Accordingly, the Court finds the argument of error at Step 3 without merit.

Plaintiff contends that she does not have transferable job skills. However, the ALJ limited her to "entry level work," so transferability of job skills is inapplicable.

Proceeding to Stage 5, the question on appeal is whether substantial evidence supports the ALJ's determination that there is work which plaintiff is capable of performing on a regular full-time basis. Residual functional capacity (RFC) is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard, 276 F.3d at 240. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." Yang v. Comm'r of Soc. Sec., No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004). Howard does not stand for the proposition that all impairments deemed "severe" in step two must be included in the hypothetical. The regulations recognize that individuals who have the

same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms. 20 C.F.R. § 404.1545(e).

The ALJ found that she could frequently lift and carry up to ten pounds, and she should do no climbing of ropes, ladders or scaffolds and only occasional stair-climbing. The ALJ limited her to entry level work with simple one-two step procedures, no frequent changes in routines, no requirement for detailed or complex problem solving, independent planning, or the setting of goals. He found she should work in an object oriented environment with only occasional interaction with co-workers, supervisors or the general public. The testifying vocational expert identified work existing in significant numbers that would meet these restrictions.

Ms. Nelson argues that she is not capable of doing work that requires even light lifting, or that requires "being on her feet." She also contends that her panic disorder precludes following directions or being around people. However, considering the record as a whole, substantial evidence supports the ALJ's determinations that her limitations are not as severe as she claims.

Ms. Nelson saw Dr. Siddiqui in mid-2004, at which time he noted her anxiety. He saw her again in November of 2004 and in February of 2005, but there are no records of further treatment with him until his October 2006 report. In that report, Dr. Siddiqui recounted the physical and psychological history Ms. Nelson had provided him. He did not indicate that he performed any clinical examination, but he opined that she "can not work with other people around as she gets paranoid," and that she "can not maintain attention on a two hour segment." Tr. 263.

In contrast, Dr. Ringer, the physician who performed the "coil placement" for her aneurysm, conducted a mental status exam in March of 2006 and pronounced her "normal." Tr. 139. He also noted at that time that her one-sided partial paralysis had "essentially completely resolved." In July

6

of 2006, Dr. Ringer again concluded "normal" after her mental status exam, but he did note "sad" affect. Tr. 256. In March of 2007, Dr. Ringer again found a normal mental status exam, and her affect was listed as normal as well. Tr. 274.

The Commissioner asked consultant Dr. Miller to perform a psychological examination. Dr. Miller interviewed Ms. Nelson (as well as her husband) and administered a number of tests, spending a lengthy time with her. He found no evidence of distortion or malingering. Tr. 180. Her short term memory digit span score was at the 80th percentile. Her verbal skills were high average and her nonverbal skills were low average. Tr. 180. Her adaptive behavior was in the low range, but Dr. Miller observed, "I suspect the score is depressed by the husband's response set." Tr. 189. She was a slow worker. Her memory, reasoning skills and problem solving were grossly intact. Tr. 189.

The ALJ noted Dr. Miller's report that claimant was able to maintain focus on a one-to-one basis. Tr. 21. The ALJ also considered Ms. Nelson's daily activities, which, according to her testimony, included crochet and crossword puzzles, both activities that require some concentration.

The question for this Court is not whether the record includes substantial evidence to support a decision contrary to the ALJ's. The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). The Court conclude that substantial evidence exists in the record viewed as a whole to support the decision of the ALJ.

Accordingly, we must affirm.

It is noted that plaintiff contends that the Court should consider "the competitive nature of the labor market and the fact that jobs are less available for those who in reality are disabled and impaired." Plaintiff's brief at 10. Both the Commissioner and the Court are precluded from considering such factors. Title 42 U.S.C. § 423(d)(2)(A) states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work*.

[emphasis supplied].

An order in conformity has this day entered.

8